[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 26.]

CHRYSLER CORPORATION, APPELLANT, *v*. TRACY, TAX COMMR., APPELLEE.

[Cite as *Chrysler Corp. v. Tracy*, 1995-Ohio-124.]

*Taxation—Sales and use taxes—Natural gas companies which merely market natural gas not included within definition of "natural gas company" in R.C. 5739.02(B)(7) and are not exempt from sales tax.*

(No. 94-380—Submitted April 18, 1995—Decided August 9, 1995.)

APPEAL from the Board of Tax Appeals, No. 91-K-1523.

————————————

{¶ 1} During the natural gas shortages beginning in 1973, the Public Utilities Commission of Ohio encouraged large industrial consumers to purchase natural gas through independent natural gas marketers. This program expanded to states neighboring Ohio. Ultimately, the Federal Power Commission, predecessor to the Federal Energy Regulatory Commission, adopted a national program. Under the program, independent marketers obtained natural gas from producers and arranged to transport it over the national pipeline network to customers. After the shortages in the seventies abated, the program continued because the independent marketers were able to sell the natural gas for less than the regulated public utility companies.

{¶ 2} Chrysler purchased natural gas from Yankee Resources, Inc., later renamed Access Energy Corporation ("Access"). Under their agreement, Access supplied Chrysler with whatever natural gas Chrysler needed in addition to Chrysler's purchases from East Ohio Gas Company. Chrysler heated its plant and offices with the disputed natural gas.

{¶ 3} Access purchases natural gas from producers located in Ohio and other states and arranges to transport the natural gas through pipeline company facilities and local distribution companies, for which it pays a fee. The local

distribution company, East Ohio Gas Co. in this case, then delivers natural gas to Chrysler. Chrysler does not receive the exact natural gas that Access puts in the system. Access's president likened the process, which he called displacement sales, to depositing $100 in an automatic teller machine and withdrawing the same amount of money, but not the same $100, at another location. According to the contract, title to the natural gas passes to Chrysler at the delivery point, *i.e.,* "the point or points of interconnection between [Access's] supply of natural gas and the pipeline facilities of East Ohio [Gas Co.] for ultimate delivery to [Chrysler]."

**{¶ 4}** Moreover, Access does not hold itself out to an indefinite public to sell natural gas; it negotiates contracts with customers to provide the natural gas. It does not own any facilities to produce, transport, or distribute natural gas. Access does not pay any public utility tax, and no government unit has granted Access any rights or franchises to operate a public utility.

**{¶ 5}** Furthermore, Access, when known as Yankee Resources, Inc., obtained relief from regulation from the Public Utilities Commission. In *In the Matter of the Application of Yankee Resources, Inc.,* (Sept. 9, 1982), PUCO No. 82-1086-GA-ARJ, unreported, the commission determined that Access's activities were "not the type which fall under the definition of a natural gas company or pipe-line company." The commission described Access's activities as marketing or brokering gas and found that Access was "not a public utility."

**{¶ 6}** The commissioner assessed sales and use taxes against Chrysler on its purchases of natural gas from Access during the audit period January 1, 1987 through June 30, 1990. He found that Access was not a natural gas company under R.C. 5727.01. On appeal, the Board of Tax Appeals ("BTA") affirmed. The BTA concluded that Access was a natural gas marketer that only temporarily acquired title to the natural gas to facilitate transportation and distribution of natural gas to the customer. It concluded that the General Assembly did not intend "to include within the definition of natural gas companies those entities which merely market

2

natural gas." Thus, according to the BTA, the disputed purchases are not exempt under R.C. 5739.02(B)(7).

{¶ 7} The cause is now before this court upon an appeal as of right.

———————————

*Teaford, Rich, Coffman & Wheeler* and *Robert J. Kosydar*, for appellant.

*Betty D. Montgomery,* Attorney General, and *Barton A. Hubbard*, Assistant Attorney General, for appellee.

*Emens, Kegler, Brown, Hill & Ritter, Paul D. Ritter Co., L.P.A*., and *Holly R. Fischer*, urging affirmance for *amicus curiae*, Enron Access Corp.

*Emens, Kegler, Brown, Hill & Ritter Co., L.P.A., Thomas W. Hill* and *O. Judson Scheaf III*, urging affirmance for amicus curiae, Ohio Gas and Oil Association, Inc.

———————————

*Per Curiam.*

{¶ 8} R.C. 5739.02(B)(7) states:

"(B)  The [sales] tax does not apply to the following:

"* * *

"(7)  Sales of natural gas by a natural gas company * * *, if in each case the thing sold is delivered to consumers through * * * pipes, * * * all terms as defined in section 5727.01 of the Revised Code[.]"

{¶ 9} Former R.C. 5727.01(E)(4), now (D)(4), states:

"Any person:

"* * *

"(4)  Is a natural gas company when engaged in the business of supplying natural gas for lighting, power, or heating purposes to consumers within this state[.]"

{¶ 10} Chrysler argues that Access supplies it with natural gas because it purchases the natural gas and sells it to Chrysler. Accordingly, Chrysler contends

that Access is a natural gas company and its sales to Chrysler are exempt. The commissioner responds that Access is an unregulated natural gas marketer and does not own or control any physical assets to produce, transport, or distribute natural gas. Thus, the commissioner reasons that Access is not "supplying" natural gas and is not a natural gas company.

{¶ 11} This case turns on whether Access is "supplying" Chrysler with natural gas. According to R.C. 1.42:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

{¶ 12} We conclude that the Public Utility Commission's decision *in In the Matter of the Application of Yankee Resources, Inc., supra,* provides a technical or particular meaning to the term "supplying." In that matter, the commission held that Yankee, Access's predecessor, was not a natural gas company and, hence, not a public utility. Yankee operated then exactly as Access does now in this case. It purchased natural gas, taking title to it as in the instant case, arranged to transport it through pipelines, and sold it to contract customers.

{¶ 13} Accordingly, Access is a not natural gas company because it is not engaged in the business of supplying natural gas to Chrysler, and its sales of natural gas to Chrysler are taxable.

{¶ 14} Consequently, we affirm the BTA's decision because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

————————————